MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant, vs. PALLANGE and others, Respondents.

*April 10—May 12, 1931.*

130

For the appellant there was a brief by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *James D. Shaw.*

For the respondent Sales Publishing Corporation there was a brief by *Mehigan & Regan,* attorneys, and *William F. Hannan* of counsel, all of Milwaukee, and oral argument by *Mr. Irving P. Mehigan, Mr. Hannan,* and *Mr. William F. Quick* of Milwaukee.

OWEN, J.   Judging from the brief and argument made by the appellant, as well as a consideration of the amended com-

plaint, we conceive the dominant purpose of the action to be that of restraining the defendant Sales Publishing Corporation from a continuance of its agitation for lower street-car fares for North Milwaukee. Under the most aggravated circumstances this would present a delicate situation. Light and trivial causes do not justify judicial restraint upon the liberty of the press even though such power exists under any circumstances.

Sec. 3, art. I, of the constitution provides that "Every person may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that right, and no laws shall be passed to restrain or abridge the liberty of speech or of the press." This provision secures to every person the right to speak, write, and publish his sentiments on all subjects. It recognizes that there may be an abuse of that right, and that there shall be responsibility for such abuse, but no law shall be passed to restrain or abridge the liberty of speech or of the press. It is the view of many courts that this provision of the constitution deprives courts of equity of the right to restrain the publication of any article or sentiment, and that the only remedy available to one who suffers damage by reason of improper publications is an action at law to recover damages for injuries sustained. All power of censorship is removed. All power to restrain the publication is taken away. Neither personal nor property rights may be protected by injunction so far as they are affected by the freedom of speech or of the press. It was said by Mr. Chief Justice PARKER in *Comm. v. Blanding,* 3 Pick. (Mass.) 304, at p. 313:

"It is well understood, and received as commentary on this provision for the liberty of the press, that it was intended to prevent all such previous restraints upon publications as had been practiced by other governments, and in early times here, to stifle the efforts of patriots towards

enlightening their fellow subjects upon their rights and the duties of rulers. The liberty of the press was to be unrestrained, but he who used it was to be responsible in case of its abuse; like the right to keep firearms, which does not protect him who uses them for annoyance or destruction."

To the same effect are *Cowan v. Fairbrother*, 118 N. C. 406, 24 S. E. 212; *New Orleans v. Crescent Newspaper*, 14 La. Ann. 804; *Marx & Haas Jeans C. Co. v. Watson*, 168 Mo. 133, 67 S. W. 391; *Respublica v. Dennie*, 4 Yeates (Pa.) 267; *Life Association v. Boogher*, 3 Mo. App. 173; 2 Cooley, Const. Lim. (8th ed., Carrington) p. 883; *Howell v. Bee Pub. Co.* 100 Neb. 39, 158 N. W. 358.

There is a strong current of authority to the effect that the use of letters, circulars, and printed matter may be restrained where they are used as a means of carrying on a boycott. Appellant relies entirely upon such cases. This practice is upheld on the theory that courts of equity have the power to restrain a boycott under certain circumstances, and that, having the power to restrain the boycott, they have the power, incidentally, to restrain any means by which it is carried on. *Gompers v. Bucks S. & R. Co.* 221 U. S. 418, at p. 437 (31 Sup. Ct. 492).

If the allegations of the amended complaint in this case disclosed a situation where mob violence incited by the publications complained of made it impossible for the plaintiff to discharge its public functions, or even though its proper rendition of public service was seriously hampered by reason thereof, an interesting question might arise, which is not presented by the situation disclosed by the allegations of the amended complaint. That document does not reveal a case of serious disturbance or interference of any consequences with the discharge of its public functions by the appellant. The complaint is far more resounding and rhetorical than is justified by a calm consideration and

analysis of the facts set forth. Perhaps the strongest allegation of the amended complaint justifying judicial interference by injunction is the following:

"That following such publication a considerable number of passengers riding upon said lines, incited thereby and by the desire to provoke arrest and raise a test case, as suggested editorially in another article of said issue of September 5, 1929, have forcibly resisted fare collection; that said conduct was induced by the acts of the defendant John Pallange and the defendant Sales Publishing Corporation, and, as a result thereof, plaintiff was unable to collect such fares and has lost, and is losing, substantial amounts in consequence thereof."

It is conceded by this allegation that such refusals as there were, were for the purpose of "raising a test case." This negatives a malicious purpose. The number of passengers who refused to pay their fare is not stated. The date upon which they refused to pay their fare is not indicated. The character of the trouble which resulted from their refusal to pay the fare is not specified. The amount of fare which it has lost in this manner is not disclosed. All of the trouble, loss, and damage which the plaintiff alleges it has sustained, or with which it is threatened, could have arisen from the conduct of one passenger but for the allegation that "a considerable number of passengers had refused to pay their fare." Two passengers responds to this allegation. If it be conceded that the court has power to enjoin the publication of articles similar to those set forth in the amended complaint, the alleged facts set forth in the complaint certainly afford no justification for its exercise. Injunctions do not issue for inconsequential or trivial causes. "A mere apprehension of future injury is not enough to warrant the issuance of a permanent injunction." 14 Ruling Case Law, p. 354.

Neither is there sufficient in the complaint to warrant issuance of an injunction against the defendants John Doe

and Richard Roe. The allegations of the complaint with reference to these defendants are:

"That the defendants John Doe and Richard Roe are individuals whose names are unknown to the plaintiff and who threaten to respond to the appeal of the defendant Sales Publishing Corporation that passengers upon the plaintiff's lines in the annexed territory insist, by violence, upon carriage at less than the rates of fare which the plaintiff is required by law to collect for carriage on such lines."

And further:

"That the defendant John Pallange and the defendants John Doe and Richard Roe will, as the plaintiff is informed and believes, unless enjoined, continue to pursue a course of conduct which will result in disturbances upon the plaintiff's cars and prevent the orderly furnishing of its public transportation service in said territory. That the defendant John Pallange will pursue such course of conduct by communications and utterances of the character set forth in 'Exhibit A,' hereunto annexed, and the defendants John Doe and Richard Roe, by resisting and through their example, will induce others to resist the collection of said lawful rates of fare."

John Doe and Richard Roe are not even identified. No acts of violence on their part are specified. They are simply alleged to be two persons "unknown to the plaintiff, who threaten to respond to the appeal of the defendant Sales Publishing Corporation that passengers upon the plaintiff's lines in the annexed territory insist, by violence, upon carriage at less than the rates of fare which the plaintiff is required by law to collect for carriage on such lines," and that plaintiff is informed and believes that unless enjoined they will continue to do so.

The whole tenor of the complaint with reference to John Doe and Richard Roe is most general, vague, and indefinite, and is wholly lacking in specifying any overt act on their part, or any declaration made by them justifying the belief which the appellant pretends to indulge. The allegations

of this complaint bear no comparison whatever to those contained in the complaint in *Milwaukee E. R. & L. Co. v. Bradley*, 108 Wis. 467, 84 N. W. 870, which the appellant rather weakly invokes to support the amended complaint in this action.

No contention is made that the complaint states a cause of action for damages against any one. In fact, it is quite barren of any allegations that damages were sustained. The allegation to that effect is that several passengers have refused to pay their fare to provoke arrest and raise a test case. It is inferable that by reason of such refusal they were not permitted to ride and, consequently, no loss resulted to the appellant. We apprehend that these are incidents which are encountered from time to time by the appellant in the absence of any newspaper publications such as those complained of. The demurrers to the amended complaint were properly sustained on the ground that it does not state facts sufficient to constitute a cause of action.

*By the Court.*—Order affirmed.