James M. ELFELT, Joseph P. Elfelt, Anthony J. Elfelt, Lawrence W. Elfelt, Paul G. Elfelt, David C. Elfelt and Stephen M. Elfelt, Plaintiffs-Respondents-Cross Appellants,

v.

Albina COOPER, Defendant-Appellant-Cross Respondent-Petitioner,

Dale T. COOPER, Defendant.

Supreme Court

*No. 90-1326. Oral argument April 28, 1992.—Decided June 17, 1992.*

(Also reported in 485 N.W.2d 56.)

For the defendant-appellant-cross respondent-petitioner there were briefs by *William A. Pangman, Jerome F. Buting* and *William A. Pangman & Associates, S.C.,* Waukesha and oral argument by *William A. Pangman.*

For the plaintiffs-respondents-cross appellants there was a brief by *Richard R. Kobriger* and *Cramer, Multhauf & Hammes,* Waukesha and oral argument by *Mr. Kobriger.*

LOUIS J. CECI, J. This case is before the court on a petition for review of a published decision of the

court of appeals, *Elfelt v. Cooper,* 163 Wis. 2d 484, 471 N.W.2d 303 (Ct. App. 1991). The court of appeals affirmed the judgment of the circuit court for Waukesha County, Clair Voss, Circuit Judge, which declared, after a jury trial, that the plaintiffs (the Elfelts) were owners of an undivided one-half interest in the home of the defendant Albina Cooper (Mrs. Cooper) as tenants in common. The judgment ordered a sheriff's sale of the property and determined an amount of rent due from Mrs. Cooper to the Elfelts.

The issue presented for review is whether sec. 6331 of the Internal Revenue Code, 26 U.S.C. sec. 6331 (I.R.C. sec. 6331),[1] gives the Internal Revenue Service (IRS) the authority to sell Dale Cooper's (Mr. Cooper) undivided one-half interest in Mr. and Mrs. Cooper's homestead held in joint tenancy. We hold that without Mrs. Cooper's consent, and in the absence of court action, I.R.C. sec. 6331 does not give the IRS the authority to sell Mr. Cooper's interest in the homestead, and we therefore reverse the court of appeals and remand to the

---

[1]I.R.C. sec. 6331 provides in relevant part:

**Section 6331. Levy and distraint**

**(a) Authority of Secretary**
 If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. . . .

**(b) Seizure and sale of property**
 The term "levy" as used in this title includes the power of distraint and seizure by any means. . . . In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

circuit court with directions to enter judgment declaring Mrs. Cooper to be the sole owner of the property in fee simple absolute.

The facts are as follows. In 1963, the Coopers purchased the property at 38050 Dolmar Park Road, Dousman, Wisconsin, as husband and wife.[2] In 1969, construction of a home on the property was completed, and the Coopers moved in. As of the time the briefs in this case were filed, Mrs. Cooper was age 70 and had lived in the homestead for over 21 years.

On January 11, 1985, the IRS filed a lien notice against the real estate of Mr. Cooper in Waukesha County. The lien was in the amount of $13,283.22 and was for unpaid income taxes for the year 1982. It is undisputed that Mrs. Cooper was not liable for any taxes unpaid by Mr. Cooper. On November 15, 1985, after Mr. Cooper did not pay the amount in dispute, the IRS mailed notice to Mr. Cooper that the IRS had seized Mr. Cooper's interest in the homestead on Dolmar Park Road. The Coopers continued to live in the home after the seizure.

On June 25, 1986, the IRS conducted a tax sale of Mr. Cooper's interest in the home. The successful bidders were John and Stacey Elfelt. On January 1, 1987, John Elfelt made a written demand upon Mrs. Cooper for a proportionate share of the reasonable rental value of the property. On January 5, 1987, the IRS district director issued a quitclaim deed for the interest of Mr. Cooper to John and Stacey Elfelt. John and Stacey

---

[2]The property is more particularly described as:

Lot 18 in Dolmar Park, a subdivision of part of the NE ¼ of the SE ¼ of Section 17, and the NW ¼ and the SW ¼ of the SW ¼ of Section 16, in Township number 6 N, Range 17 East, in the town of Ottawa, Waukesha County, Wisconsin.

Elfelt issued a quitclaim deed to their seven sons, the plaintiffs in this matter.

On March 28, 1988, the Elfelts filed a summons and complaint, which was later amended, requesting that the court declare the Elfelts owners of an undivided one-half interest in the property with Mrs. Cooper as tenants in common, requesting a partition of the property by its sale with one-half of the proceeds to go to the Elfelts, plus rent in the amount of one-half the reasonable rental value of the property subsequent to January 1, 1987. The Coopers both filed *pro se* motions to dismiss. After a hearing on March 13, 1989, the circuit court denied the Coopers' motions to dismiss. On April 1, 1989, Mr. Cooper died.

Mrs. Cooper filed a *pro se* answer and a motion to dismiss on April 25, 1989. The Elfelts responded with a motion for summary judgment. Mrs. Cooper retained counsel, and, after a hearing, the circuit court denied both parties' motions.

On September 6, 1989, Mrs. Cooper filed a third-party summons and complaint, an amended answer, affirmative defenses, and a counterclaim for quiet title. The third-party complaint was dismissed by stipulation of the parties. The amended answer and affirmative defenses alleged that the IRS failed to follow certain procedures mandated by the I.R.C., that the seizure and sale was invalid, and that the quitclaim deed to John and Stacey Elfelt was therefore invalid.

The case was finally tried in April, 1990, to an advisory jury. The court reserved for itself the legal question of whether the IRS had the legal authority to sell Mr. Cooper's interest in the homestead in the manner and form accomplished. The jury was asked to answer one verdict question:

Did the Internal Revenue Service comply with the legal requirements in selling to John and Stacey Elfelt all of Dale T. Cooper's interest in the real property located at 38050 Dolmar Park Road, Dousman, Wisconsin?

The jury's answer was "They (the Internal Revenue Service) did comply." Mrs. Cooper filed a motion for judgment notwithstanding the verdict, which was denied. The court entered judgment for the Elfelts, finding that the IRS had legally sold Mr. Cooper's interest in the homestead to the Elfelts; declaring the Elfelts and Mrs. Cooper to be tenants in common, each owning in fee simple an undivided one-half interest in the property; ordering a sheriff's sale to partition the property; and ordering Mrs. Cooper to pay rent to the Elfelts.

The court of appeals affirmed the circuit court judgment and remanded for further findings. *Elfelt,* 163 Wis. 2d at 501-02. We granted Mrs. Cooper's petition for review.

██

The issue presented by this case, whether I.R.C. sec. 6331 gives the IRS the authority to sell Mr. Cooper's undivided one-half interest in Mr. and Mrs. Cooper's homestead, involves the application of a statute to an undisputed set of facts. Statutory interpretation is a question of law which we review without deference to the lower courts. *Pulsfus Farms v. Town of Leeds,* 149 Wis. 2d 797, 803-04, 440 N.W.2d 329 (1989). The jury's verdict in this case, which was advisory only, found that the IRS had complied with the legal requirements in selling Mr. Cooper's interest to John and Stacey Elfelt. We do not review that verdict.

Mrs. Cooper argues that the IRS did not have the authority to transfer ownership of Mr. Cooper's ownership interest in the Coopers' homestead to the Elfelts in

1015

the manner and form accomplished: that because the property was a jointly held homestead, it may only be sold with Mrs. Cooper's consent or by a court order in the absence of Mrs. Cooper's consent. Mrs. Cooper also argues that homestead property is indivisible and that therefore, under I.R.C. sec. 6335, it was improper to sell Mr. Cooper's interest without selling the property in its entirety. Finally, Mrs. Cooper argues that I.R.C. sec. 6331 is unconstitutional as applied because it does not require that the IRS give notice to all parties having an interest in property before the property is sold.

The Elfelts respond that the IRS did have the authority, under I.R.C. secs. 6331, 6335, 6338, and 6339, to sell Mr. Cooper's undivided one-half interest in the homestead without Mrs. Cooper's consent. In addition, the Elfelts argue that Mrs. Cooper was given remedies by I.R.C. secs. 6337, 6343, and 7426 that she failed to use, that the constitutionality of I.R.C. sec. 6331 has long been settled, and that state court is not the proper forum for Mrs. Cooper's arguments.

We first note that the state court was a proper forum for this action and for Mrs. Cooper's defense to the action. The Elfelts, not Mrs. Cooper, commenced this action in the state court, seeking to enforce whatever interest they obtained from the IRS, seeking rent from Mr. and Mrs. Cooper, and seeking to have the home sold. The Elfelts should not now complain about Mrs. Cooper presenting her defenses to the action in a forum that the Elfelts chose. In addition, due to Mrs. Cooper's counterclaim, we view this as a quiet title action. As stated by the U. S. Court of Appeals for the 7th Circuit in a case concerning federal tax sales of parcels of land located in Wisconsin:

Controversies over title to land within a state are particularly appropriate for determination by the courts of that state. We find nothing anywhere to imply that state courts lack power to decide such questions in a quiet title action on the ground that the conveyances were governed by federal law and were an exercise of federal power.

*Popp v. Eberlein,* 409 F.2d 309, 311 (7th Cir. 1969). This controversy is properly in the state court system.

The I.R.C. provides the IRS at least three methods of enforcing collection of unpaid taxes. First, the government may sue for the unpaid amount and, if it obtains a judgment, may exercise the usual rights of a judgment creditor. *United States v. Rodgers,* 461 U.S. 677, 682 (1983) (citing I.R.C. secs. 6502(a), 7401, and 7402(a)).

A second method is a lien foreclosure suit, authorized by I.R.C. sec. 7403. The suit is a civil action brought in federal district court "to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." I.R.C. sec. 7403(a). Pursuant to I.R.C. sec. 7403(b), "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." The suit is a plenary action which requires the court to "adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." I.R.C. sec. 7403(c).

A third method that the IRS has for enforcing collection of unpaid taxes is the administrative levy, authorized by I.R.C. sec. 6331. Under I.R.C. sec. 6331, the IRS may levy upon and sell the property of a delinquent taxpayer in order to satisfy the tax liability of that taxpayer. As opposed to the plenary nature of a lien

foreclosure suit, the levy and distraint authorized by I.R.C. sec. 6331 is only a provisional method that typically does not require judicial intervention. *United States v. National Bank of Commerce*, 472 U.S. 713, 720 (1985). In addition, "§ 6331, unlike § 7403, does not 'implicate the rights of third parties,' because an administrative levy, unlike a judicial lien-foreclosure action, does not determine the ownership rights to the property." *Id.* at 731. If parties other than the delinquent taxpayer claim rights in the levied property, they may assert those rights in a postseizure administrative or judicial proceeding under I.R.C. sec. 6343 or sec. 7426. *Id.* at 728-29. Parties proceeding under I.R.C. secs. 6343 and 7426 have nine months from the time of the levy to assert their property rights in the levied property. *Id.* at 736 (Powell, J., dissenting). In addition, property that is sold after it is levied upon may be redeemed by the property owners or any person having an interest therein at any time within 180 days after the sale of the property. I.R.C. sec. 6337(b).

Mrs. Cooper did not avail herself of the procedures provided in I.R.C. secs. 6337(b), 6343, or 7426. If she had, this case would probably not be before us today. Instead, Mrs. Cooper argues that the IRS did not have the authority to sell Mr. Cooper's interest in the homestead property without Mrs. Cooper's consent and that the sale is, therefore, invalid. We agree.[3]

---

[3]Accordingly, we do not reach Mrs. Cooper's argument under I.R.C. sec. 6335(c) that the property was indivisible and that therefore the IRS should have sold the entire homestead, not just Mr. Cooper's interest. As we find that the IRS did not have the authority to sell Mr. Cooper's interest in the property by administrative sale without Mrs. Cooper's consent, we need not reach the Elfelts' argument that Mrs. Cooper failed to use the remedies provided to her by I.R.C. secs. 6337, 6343, and 7426.

In applying the I.R.C., state law determines the nature of the legal interest which the taxpayer had in the homestead property. *National Bank,* 472 U.S. at 722. This is because the I.R.C. does not create any property rights, but merely attaches federally defined consequences to rights which are created under state law. *Id.* Once state law has been used to determine the nature and existence of a property interest, further state law is inoperative, and the tax consequences thenceforth are

---

We also do not reach Mrs. Cooper's constitutional arguments. Although the U. S. Supreme Court has stated that "[t]he constitutionality of the levy procedure, of course, 'has long been settled,' " *National Bank,* 472 U.S. at 721 (citations omitted), we are doubtful of the constitutionality of the actions of the IRS in this case. If we were not to reverse the court of appeals, the IRS's actions would have led to Mrs. Cooper's no longer having a right of survivorship in her spousal homestead, thereby greatly diminishing the value of her property interest. The court of appeals was incorrect when it stated that "[Mrs. Cooper] has the same interest after the sale that she did before the sale." *Elfelt,* 163 Wis. 2d at 496. Before the sale, Mrs. Cooper had an equal undivided jointly held interest in the whole of the homestead with Mr. Cooper, with a right of survivorship. After the sale, she had an interest in one-half of the property as a tenant in common, with no right of survivorship. This diminution in the value of her property interest, without any requirement that she be given adequate notice by the IRS, puts the application of I.R.C. sec. 6331 into serious constitutional doubt. *See Mennonite Board of Missions v. Adams,* 462 U.S. 791, 795–800 (1983) (Prior to an action that will affect an interest in life, liberty, or property protected by the due process clause, a state must provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Mere notice by publication is not sufficient when interested parties can be notified by more effective means such as personal service or mailed notice.).

dictated by federal law. *Id.* (citing *United States v. Bess,* 357 U.S. 51, 56–57 (1958)). In a levy proceeding, the IRS " 'steps into the taxpayer's shoes' . . . [and] acquires whatever rights the taxpayer himself possesses." *Id.* at 725 (citations omitted).

In *National Bank,* the delinquent taxpayer was a codepositor in two jointly held bank accounts. *Id.* at 716. Relevant state law provisions, as well as the taxpayer's contract with the bank, gave the taxpayer the unqualified right to withdraw the full amounts on deposit in the joint accounts without notice to his codepositors. *Id.* at 723. The Court stated:

> '[I]t is inconceivable that Congress . . . intended to prohibit the Government from levying on that which is plainly accessible to the delinquent taxpayer-depositor.' . . . The taxpayer's right to withdraw is analogous in this sense to the IRS's right to levy on the property and secure the funds. Both actions are similarly provisional and subject to a later claim by a codepositor that the money in fact belongs to him or her.

*Id.* at 726 (citations and footnote omitted). In a footnote to the above quote, the Court stated:

> We stress the narrow nature of our holding. By finding that the right to withdraw funds from a joint bank account is a right to property subject to administrative levy under § 6331, we express no opinion concerning the federal characterization of other kinds of state-law created forms of joint ownership. This case concerns the right to levy only upon joint bank accounts.

*Id.* at 726 n.10.

Following *National Bank,* we must first look to state law to determine the nature and existence of Mr.

Cooper's property right in the homestead. Once that is determined, further state law consequences are inoperative, and we must turn to federal law. We bear in mind that the IRS cannot gain an interest superior to that which Mr. Cooper himself held.

Under Wisconsin law, the nature of homestead property held in joint tenancy between husband and wife is such that it is indivisible by one spouse without the consent of the other. Section 706.02(1)(f), Stats.[4] The policy objectives of the homestead statute have been long recognized as laudable, providing to each spouse absolutely inalienable rights:

> The policy of the statute indicated is not to give the wife a mere personal right for her personal benefit which she may waive, or be estopped by her conduct from insisting upon, but to protect the home for the benefit of the family and every member of it,—a beneficent policy of the highest character, calling for a broad, liberal application of the statute, so as to carry it out, fully, in letter and spirit. If it should be held that the homestead right is a mere privilege which the wife may waive, or which may be lost under the rules of equitable estoppel, a very efficient way would be open to evade and nullify the statute. Such right is placed high above the reach of any dangers by the absolute disability to alienate the homestead in any manner, except by a joint conveyance of some kind, signed by the husband and wife.

[4]Section 706.02(1)(f), Stats., provides in relevant part:

**706.02 Formal requisites. (1)** Transactions under s. 706.01(1) shall not be valid unless evidenced by a conveyance which:

. . .

(f) Is signed, or joined in by separate conveyance, by or on behalf of each spouse, if the conveyance alienates any interest of a married person in a homestead under s. 706.01(7) . . ..

> The disability of the husband to otherwise convey the homestead is as complete as if it were not alienable at all, and of the wife to otherwise consent to such alienation, as if she were a minor.

*Cumps v. Kiyo,* 104 Wis. 656, 662, 80 N.W. 937 (1899). While the above-quoted language is dated, it illustrates the nature of the property right that a spouse owns in a homestead in Wisconsin: it is absolutely inalienable without the consent of both spouses and is therefore worthless to one spouse acting alone without the consent of the other.

There is no way to convey any interest in a jointly held spousal homestead in Wisconsin without both spouses' consent except through court proceedings, such as a divorce, bankruptcy, or lien foreclosure. This requirement of spousal consent for the extrajudicial conveyance of any interest in jointly held homestead property is not a mere consequence of a property interest that becomes inoperative under federal law, as the court of appeals incorrectly determined. *Elfelt,* 163 Wis. 2d at 493, 497. Rather, the statutory requirement of spousal consent illustrates that the nature of the property interest owned by a spouse in a jointly held homestead is a limited interest that can only be alienated with the consent of both spouses or by court action.

Mr. Cooper's interest in the Coopers' spousal homestead is distinguishable from the joint bank account in *National Bank,* where the delinquent taxpayer had access to the entire amount without prior consent of his codepositors. A homestead held jointly by a husband and wife is of an entirely different nature than a joint tenancy between persons who are not married: no interest of a homestead held jointly by a husband and wife can be

conveyed without the consent of both spouses, sec. 706.02(1)(f), Stats.; while joint tenants who are not married have the right to sell their individual interests and thereby sever the joint tenancy. *Nelson v. Albrechtson,* 93 Wis. 2d 552, 563, 287 N.W.2d 811 (1980) (citing *Nichols v. Nichols,* 43 Wis. 2d 346, 349, 168 N.W.2d 876 (1969)).

As Mr. Cooper would not be able to convey any interest of the jointly held spousal homestead without Mrs. Cooper's consent, the IRS, which merely steps into Mr. Cooper's shoes, also cannot convey any interest of the jointly held spousal homestead without either Mrs. Cooper's consent or court action. Due to the nature of Mr. Cooper's property interest under Wisconsin law, any conveyance of that interest by the IRS without Mrs. Cooper's consent and without court action is ineffective. Consequently, the Elfelts did not obtain and do not now own an interest in Mrs. Cooper's homestead.

We recognize that if the IRS had proceeded under I.R.C. sec. 7403 and brought a lien foreclosure action in district court, the IRS might validly have conveyed an interest in the Coopers' jointly held spousal homestead. But even under I.R.C. sec. 7403 the IRS would have to convince the court that such action would be equitable. *See Rodgers,* 461 U.S. at 709 (courts should exercise limited equitable discretion in I.R.C. sec. 7403 proceedings; I.R.C. sec. 7403 empowers a district court to order the sale of a family house in which a delinquent taxpayer has an interest, even though a nondelinquent spouse also has a homestead interest in the house under state law).

As Mr. Cooper is deceased and because we hold that the IRS did not validly convey any interest in the homestead to the Elfelts, Mrs. Cooper now owns the property

in fee simple absolute under her right of survivorship. We therefore remand this matter to the circuit court and direct that the court enter judgment declaring Mrs. Cooper to be the sole owner of the property in fee simple absolute.

*By the Court.*—The decision of the court of appeals is reversed, and the matter is remanded to the circuit court with directions to enter judgment declaring Mrs. Cooper to be the sole owner of the property in fee simple absolute.