FOREST COUNTY, a political subdivision of the State of
Wisconsin, Plaintiff-Appellant,

v.

Wesley S. GOODE, Defendant-Respondent.†

Court of Appeals

*No. 96–3592. Submitted on briefs September 15,
1997.—Decided November 25, 1997.*

(Also reported in 572 N.W.2d 131.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Michael J. Gableman* of *Kawalski Law Office* of Antigo.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John F. Hovel* of *Kravit, Gass & Weber, S.C.* of Milwaukee.

On behalf of the State of Wisconsin in support of the plaintiff-appellant, the cause was submitted on the amicus curiae brief of *James E. Doyle*, attorney general, and *Lorraine C. Stoltzfus*, assistant attorney general.

Before Cane, P.J, Myse and Hoover, JJ.

CANE, P.J. Forest County appeals two judgments entered against Wesley Goode to enforce FOREST COUNTY, WI ZONING ORDINANCE § 5.03.10. The County appeals the judgment filed October 16, 1996, denying its request for an injunction ordering Goode to relocate

his house to comply with the fifty-foot setback requirement, asserting the trial court erroneously exercised its discretion. The County also appeals the judgment filed December 2, 1996, ordering Goode to pay an $8,540 forfeiture, asserting the trial court erred in calculating the number of days of violation. Because we determine the trial court erroneously exercised its discretion by refusing to grant the injunction, we reverse. Regarding the forfeiture, we hold the trial court incorrectly calculated the number of days of violation. Therefore, we remand this matter to the trial court for a determination of the per diem forfeiture.

The underlying facts, while somewhat lengthy, are not disputed. Goode owned two adjoining lakefront lots. The parcel purchased in 1988 had an existing structure located twenty-nine feet from the ordinary high water mark (OHWM) of Ground Hemlock Lake. In 1992, Goode purchased the adjoining parcel. He decided to tear down the building on the first parcel and construct a new residence on the entire property.

In June of 1993, Dawn Schmidt, Forest County zoning administrator, met with Goode at his property, and together they measured and staked a distance of fifty feet from the OHWM. Goode then obtained a building permit to construct the new house fifty feet from the lake.[1]

---

[1] The permit was issued in accordance with FOREST COUNTY, WI ORDINANCE § 5.03.10, which provides in pertinent part:

> A reduced setback from the waterline may be permitted by the zoning administrator where there are at least five main buildings within 500 feet of the proposed site that are built to less than the required setback. In such cases, the setback shall be the average of the nearest main buildings on each side of the proposed site, *except that in no case shall the setback be less than 50 feet*. (Emphasis added.)

Goode then hired Dan Stampfl to assist with construction of the new residence. Stampfl arranged for Flannery Trucking to perform the excavation. Prior to excavation, Stampfl and Flannery observed the stakes marking the fifty-foot setback. After completion of the excavation but prior to pouring the concrete footings and cement walls, Stampfl remeasured and restaked the fifty-foot distance from the lake. Stampfl's measurement and placement of the stakes were incorrect; the measurement on the southern point was correct at fifty feet, but the stake at the northern point was only thirty-five feet from the water's edge. The record does not reveal the reason for the incorrect measurements.

Construction of the residence and finish work of the interior continued without interruption until completion. Stampfl's measuring error was not discovered until after the building was completely finished. In March of 1994, a homeowner contacted Schmidt and said there may be a problem with the setback at the Goode property. In May of 1994, Schmidt returned to the Goode residence and measured the distance from the lake to the house, and confirmed the discrepancy in the thirty-five-foot distance from the lake to the northern corner and the fifty-foot distance from the lake to the southern corner. On May 19, 1994, Schmidt advised Goode by letter that the location of his residence violated the fifty-foot setback requirement of § 5.03.10. Goode responded by letter stating that the violation was unintentional and requesting a meeting with the zoning committee. Goode's request for a variance after the fact was denied. The County then initiated these proceedings for an injunction to require Goode to comply with setback requirements and for a forfeiture because of his noncompliance with the zoning ordinance.

In September 1996, the matter was tried to the court. The trial court denied the County's request for injunctive relief and set the matter for a hearing to determine the forfeiture. At the forfeiture hearing on November 7, 1996, the trial court set a $35 per diem forfeiture and imposed it for the time period from May 19, 1994, the date of notice of the violation until January 18, 1995, the commencement of a formal action by the County, a total of 244 days. The court also imposed costs of $814.58, for a total forfeiture of $9,354.58. This appeal by the County followed.

## INJUNCTION

The County first asserts the trial court's denial of its request for an injunction was an erroneous exercise of discretion. The County reasons that § 5.03.10 prescribes the setback distance, that Goode's residence violates the ordinance, that it is authorized to seek injunctive relief by § 59.69(11), STATS., and that where it has proven an ordinance violation, it is entitled to the injunctive relief sought. Forest County contends the trial court improperly resorted to a balancing of equities analysis based on its interpretation of *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 288 N.W.2d 129 (1980).

Second, the County contends the trial court's refusal to grant the injunction is a usurpation of the zoning board's authority. Here, the board refused to issue Goode a variance allowing his residence to remain in its present location in violation of the County's zoning ordinance. The trial court found the variance was properly denied. It is the County's position that the trial court's refusal to grant the injunction under these circumstances allows the violation to con-

tinue and effectively invalidates the board's prior decisions in the matter.

· Last, the County maintains the injunction is. necessary to protect the public's right to rely on enforcement of zoning ordinances. It argues the court's decision sets a dangerous precedent because the cumulative effect of uncorrected violations undermines the purpose of the zoning plan and ordinances.

Goode responds that § 59.69(11), STATS., sets a discretionary standard for the court to follow when considering a request for injunctive relief in a suit to enforce a zoning ordinance. Also, he relies on *Bylewski* to support his position that the trial court properly engaged in a balancing analysis and appropriately denied the County's request for injunctive relief. We are not persuaded.

Goode's reliance on § 59.69(11), STATS., that forfeitures must be ordered but that injunctions are committed to the court's discretion, ignores the plain meaning of the statute. The construction of a statute or ordinance is a question of law we review de novo. *Eastman v. City of Madison,* 117 Wis. 2d 106, 112, 342 N.W.2d 764, 767 (Ct. App. 1983). Section 59.69(11) sets forth the remedies available to the County to effectuate enforcement of zoning ordinances. The statute clearly states that ordinances shall be enforced by appropriate forfeitures, and goes on to explicitly state that the County, or an affected property owner, also has the discretion to pursue injunctive relief to achieve compliance. The statute does not, as Goode suggests, create a discretionary standard for the trial court to follow in determining whether injunctive relief is warranted.

We next address Goode's argument that the trial court's decision was proper under *Bylewski*. Normally, injunctive relief is ordered in the discretion of the trial court, and this court will not change the trial court's decision unless it is an erroneous exercise of discretion. *Village of Sister Bay v. Hockers*, 106 Wis. 2d 474, 481, 317 N.W.2d 505, 508 (Ct. App. 1982). However, where a trial court bases its decision on a mistaken view of the law, its decision constitutes an improper exercise of discretion as a matter of law. *State v. Trudeau*, 139 Wis. 2d 91, 103, 408 N.W.2d 337, 342 (1987). Here, the trial court concluded that once it had determined that a violation had occurred and continued to occur, it was compelled to balance the equities and, in its discretion, determine whether to grant or deny the request for injunction.

Goode asserts that *Bylewski* directs the trial court in this case to examine and balance the competing equities and interests of the parties.[2] However, the present case is factually distinct from *Bylewski*.[3]

---

[2] The language Goode relies on to support his contention that the trial court was compelled to engage in a balancing analysis is taken out of context. Goode cites the following language: " '[F]inally, injunctive relief is addressed to the sound discretion of the trial court; competing interests *must* be reconciled and the plaintiff must satisfy the trial court that on balance equity favors issuing the injunction.' " *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 163, 288 N.W.2d 129, 135 (1980) (quoting *Pure Milk Products Co-op v. National Farmers Org.*, 90 Wis. 2d 781, 800, 280 N.W.2d 691, 700 (1979) (emphasis added)). The foregoing applies to the Court's discussion distinguishing the requirements for proving irreparable harm when granting injunctive relief to municipalities.

[3] In *Bylewski*, the county sued a landowner for replacing his existing mobile home with a new one in violation of the county

---

225

Goode's case presents the particular issue of the court's discretionary role in the case of a proven, continuing statutory zoning violation. The struggle to apply equitable principles in the modern statutory setting is evident in *Bylewski*. While *Bylewski* began to grapple with the application of equitable maxims in the statutory context, we are faced with a more complex situation of determining whether the court's withholding of injunctive relief in the face of a proven, continuing statutory zoning violation is an appropriate exercise of discretion.

The guidance *Bylewski* provides for the trial court in this case is as follows:

> In an ordinance violation, the municipality need only introduce the ordinance, and establish by a preponderance of the evidence, facts sufficient to demonstrate that the defendant has violated such ordinance before the court imposes a forfeiture. While, on the other hand, a suit for an injunctional order is addressed to the discretion of the court and requires that there be a balancing of the competing equities and interests involved. *"The true inquiry in [determining whether to grant injunctional relief prohibiting the continuation of an unlawful use or the issuance of an order for the removal of a non-conforming building or structure] is whether the building or structure is legally usable (or modifiable*

---

ordinances. The forfeiture action was filed and heard in small claims court. The county court did not impose a forfeiture, as requested in the pleadings, but issued an injunction, *sua sponte*, ordering removal of the mobile home. The court reversed, holding the county court in a small claims action lacked authority to order injunctive relief. It was in that context that the court discussed the applicability and requirements of injunctive relief.

> *and legally usable) and is intended to be used for a main or accessory use which is permitted by the applicable ordinance or by-law." Town of Sterling v. Poulin,* 2 Mass.App. 562, 316 N.E.2d 737, 739 (1974). *See also* 82 AM.JUR.2D *Zoning and Planning* § 252 at 787 (1976). "However, where it has been clear that the offending building or structure could not be utilized for any purpose permitted in the pertinent zoning district, relief has been extended to include an order for the removal of the building or structure." *Id.* at 739.

*Id.* at 167, 288 N.W.2d at 136 (emphasis added).

The trial court found that Goode's residence was built in violation of the ordinance; that an application for a variance had been filed and properly denied; and that the violation would continue unless relocation of the structure occurred. Thus, "the true inquiry in [determining whether to grant . . . the issuance of an order for the removal of a non-conforming building or structure] is whether the building or structure is legally usable." *Id.* at 167, 288 N.W.2d at 136. The true focus of the trial court's inquiry is whether the Goode residence could in any way continue to stand in accordance with the ordinance requirements. Based on its earlier finding that the setback on the northern corner of the house was thirty-five feet, the question was already answered, and it was an improper exercise of discretion at that point to deny the County's request for an injunction and order requiring Goode to comply with the fifty-foot setback as required in § 5.03.10.

We recognize the result in Goode's case has a harsh effect, and we are sympathetic to his plight. However, the trial court's refusal to issue an injunction ordering Goode to relocate his residence in compliance

with the fifty-foot setback requirement is, in effect, a judicial granting of a variance to the County zoning ordinance, a matter that had already been decided by the entity vested with the authority to make that determination. *See* § 59.694(7), STATS. Permitting a court to refuse to grant an injunction requiring a defendant to comply with the zoning ordinance would be to usurp the legislative function.[4] Specifically, in this case, if Goode can continue the undisputed unlawful use of his property after complying with only the forfeiture, the effect of the trial court's judgment would be to rezone the land as a variance from the County's ordinance, notwithstanding the fact that the power to do so is reserved solely to the County. In summary, the trial court's refusal to grant injunctive relief, when the refusal results in the unconstrained continuation of a statutory violation, is not an appropriate exercise of discretion.

In addition, the legislative decision to allow municipalities to pursue injunctive relief to effectuate compliance with the ordinance implies entitlement to the relief sought upon meeting the burden of proof. It also takes into consideration a balancing of the public harm and the private cost. Statutory provisions

---

[4] There is a split of authority whether a municipality must show that, on balance, the equities favor issuance of an injunction. Some states hold that it is not appropriate for the trial court to balance the equities in a statutory injunction case, reasoning that to do so would usurp the legislative function and, in practical effect, grant a variance, thereby invading the purview of the zoning board. *See Town of Sherburne v. Carpenter*, 582 A.2d 145, 147–48 (Vt. 1990). Other states hold that the presence of a statute authorizing injunctive relief does not eliminate the trial court's discretion to balance the equities. *Id.* at 148.

" 'which authorize a governmental agent to sue to enjoin activities deemed harmful by the [legislature] are not designed to do justice to the parties but to prevent harm to the general public.' " *See Town of Sherburne v. Carpenter*, 582 A.2d 145, 148 (Vt. 1990) (quoting *Ackerman v. Tri-City Geriatric & Health Care, Inc.*, 378 N.E.2d 145, 149 (Ohio 1978)).[5]

■■■■

We also determine that the trial court's refusal to grant injunctive relief is a misuse of discretion because it infringes on the public's right to enforcement of zoning ordinances. *See Jelinski v. Eggers*, 34 Wis. 2d 85, 93, 148 N.W.2d 750, 755 (1967). In addition, the danger of the cumulative effect of allowing violations to continue interferes with the general purpose of zoning laws, which is to promote the general welfare by providing a stable environment for the orderly development of a community. *See* 83 AM.JUR.2D *Zoning and Planning* § 70 (1992); *see also Hixon v. PSC*, 32 Wis. 2d 608, 631–32, 146 N.W.2d 577, 588–89 (1966).

It would seem apparent that the courts should not use their equitable powers to permit a proven violation of the law to continue without consequence. The dissent comments that our decision today represents a radical departure from established guidelines for granting or denying injunctive relief. To the legally-trained mind, our decision limiting the court's discretionary role in the equity arena may appear impertinent, but we find it far less disturbing than the proposition that courts, under the mantle of balancing

---

[5] *Town of Sherburne* held the trial court has only limited discretion to refuse to issue injunctive relief where a municipality seeks injunctive relief for a zoning ordinance violation. *Id.* at 148–49 (Declined to extend to case between private landowners in *Richardson v. City of Rutland*, 671 A.2d 1245 (Vt. 1995)).

the equities, can permit defendants to violate statutes with impunity. One should not be permitted at the trial court's discretion to purchase through forfeitures a variance from a zoning code.

## FORFEITURE

Forest County next asserts the trial court erred when it calculated the forfeiture using 244 days, the number of days from the notice of the violation until Forest County filed the complaint. The County argues that under *Village of Sister Bay*, the correct figure for computing the forfeiture is 861 days, representing the number of days from the filing of the complaint until the time of trial. We agree.

"[We are not] bound by a finding of a trial court that is based on undisputed evidentiary facts when the finding is essentially a conclusion of law." *Id.* at 479, 317 N.W.2d at 507. FOREST COUNTY, WI ORDINANCE § 20.05.1 provides that: "Any person who violates this ordinance shall be subject to a fine up to $200.00, plus costs of prosecution. . . . Each day the violation continues shall be considered a separate offense." The undisputed evidence in this case is that Goode's residence remained in continuous violation of § 5.03.10 from May 19, 1994, the date of the commencement of the action, until September 27, 1996, the date of trial, a total of 861 days.

Goode argues that since § 20.05.1 is silent as to when a violation commences and as to a method of calculating the period of violation, the trial court did not err by basing the forfeiture on a period of 244 days. Goode also attempts to distinguish *Sister Bay* from this case, arguing that the owners in that case received a continuing economic benefit in the form of rents and,

therefore, a continuous period of forfeiture in that case was proper. We are not persuaded.

The court in *Sister Bay* accumulated the forfeiture through the time of trial, stating that since the presumption of innocence does not apply in a civil forfeiture action, and the owners had notice of the violations, they could have corrected the violations. The court found the harm to the community was, therefore, continuous, and that the assessment was fair in light of the owners' continued benefit during that period of time. *Id.* at 480, 317 N.W.2d at 508.

Goode had notice of the violations from the time of commencement of the action through the time of trial, the violations were continuous, and Goode had the benefit of the use of his residence during that period of time. Section 20.05.1 provides that each day is a separate violation. The determination of number of days of violation based on the undisputed evidence is essentially a conclusion of law. The trial court's finding of 244 days conflicts with the undisputed evidence that the building violated the setback continuously from May 19, 1994, until September 27, 1996. We hold the proper basis for determining the total forfeiture is 861 days, calculated from the date of the commencement of the action until the time of trial.

The County asks this court to amend the amount of the forfeiture to $30,135, which represents the trial court's $35 per day forfeiture imposed for 861 days. We decline to amend the forfeiture as the County suggests. Rather, we reverse and remand to the trial court for a determination in its discretion of the per diem forfeiture to be imposed for the period of 861 days.

*By the Court.*—Judgments reversed and cause remanded.

HOOVER, J. *(dissenting in part)*. I am compelled to dissent based upon what I perceive as a reasonable difference of legal opinion. I believe the majority's decision results in a drastic departure from firmly rooted law without the benefit of legislative mandate or pointed precedent.

Section 59.69(11), STATS., provides the methods by which a county may enforce its zoning ordinances. The statute requires ordinances to be enforced by appropriate forfeitures, but gives the county or an affected property owner the further option of pursuing injunctive relief to achieve compliance. The majority concludes that the statute vests discretion solely in the county to enforce through injunction. If it is proven at trial that a zoning ordinance was violated and the violation will continue indefinitely, the majority holds the trial court must issue an injunction to remedy the violation.

The majority reaches this result in part on its observation that the statute does not create a discretionary standard for the trial court to follow in determining whether injunctive relief is warranted. I cannot accept this interpretation. I respectfully suggest that the statute does not *need* to "create a discretionary standard" because the inveterate body of law relating to injunctions already provides those standards. They are well-settled and familiar. They include the following that are germane to the instant case: A prospective injunction is an equitable remedy. *See Nelson v. Taff*, 175 Wis. 2d 178, 187–88, 499 N.W.2d 685, 689 (Ct. App. 1993). "The granting or withholding of injunctions lies within the sound discretion of the trial court." *Webster v. Dane Corp.*, 9 Wis. 2d 437, 440, 101 N.W.2d 616, 618 (1960); *see also State v. C. Spielvogel & Sons Excavating*, 193 Wis. 2d 464, 479, 535 N.W.2d

28, 34 (Ct. App. 1995). An equitable remedy such as a prospective injunction, "must, of necessity, place heavy reliance on the facts of the particular controversy." *Prince v. Bryant*, 87 Wis. 2d 662, 668, 275 N.W.2d 676, 678 (1979). "[I]njunctions are not to be issued lightly . . . ." *Bartell Broadcasters v. Milwaukee Broadcasting Co.*, 13 Wis. 2d 165, 171, 108 N.W.2d 129, 132 (1961). The general rule is that "injunctions do not issue for inconsequential or trivial causes," *Milwaukee Electric Ry. & Light Co. v. Pallange*, 205 Wis. 126, 134, 236 N.W. 549, 552 (1931), but "only to restrain an act that is clearly contrary to equity and good conscience." *Bartell*, 13 Wis. 2d at 171, 108 N.W.2d at 132.

There is not a word in the statute to signal the legislature's purpose to radically depart from these well-established principles that guide the determination to grant or deny injunctive relief. At the very least, if in the area of zoning ordinance enforcement a court no longer has discretion as to when and how to grant an *equitable* remedy, the statute should explicitly say so. Thus, when the legislature merely granted in § 59.69(11), STATS., the authority to pursue an injunction, without saying more, it could only have intended that such grant of authority incorporated the existing body of law partially surveyed above. This is not only intuitively apparent, but consistent with fundamental maxims of statutory construction. For the purpose of interpreting statutes, the legislature is presumed to act with knowledge of existing case law. *Ziulkowski v. Nierengarten*, 210 Wis. 2d 98, 104, 565 N.W.2d 164, 166 (Ct. App. 1997). It is further presumed to know that, in absence of language explicitly changing the law, the appellate court's previous construction of the law will remain unchanged. *In re Carol J.R.*, 196 Wis. 2d 882, 889, 540 N.W.2d 233, 235 (Ct. App. 1995). The statute's

language will not carry the burden of the wholesale restructuring of injunctive relief that I believe the majority's interpretation works.

The majority also relies on its interpretation of *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 288 N.W.2d 129 (1980), to conclude that § 59.69(11), STATS., provides for mandatory injunctions under certain circumstances. The pertinent issue in *Bylewski* was whether "a county court of limited authority, in a small claims type action brought pursuant to sec. 299.01(2), Stats., to recover a forfeiture for violation of county zoning ordinances, [may] also enforce compliance with the code by means of an injunctional order in the absence of statutory authority or equitable jurisdiction?" *Id.* at 160–61, 288 N.W.2d at 133. While acknowledging *Bylewski* recognized a court's discretion to grant injunctive relief, the majority does not adequately disclose the nature, extent or proper application of this discretion or effectively reconcile the trial court's discretion with its holding. It merely asserts, again relying on *Bylewski*, that if the court finds there is a violation and it will continue, it must grant injunctive relief.

Nothing in *Bylewski* compels this result. Indeed, the very quote on which the majority relies for its proposition that an injunction is mandatory merely states that courts have properly granted injunctions in certain instances, *not* that they had no option *but* to grant the injunction.[1] The majority nonetheless finds the limitation on the court's discretion in the language in

---

[1] "However, where it has been clear that the offending building or structure could not be utilized for any purpose permitted in the pertinent zoning district, relief has been extended to include an order for the removal of the building or structure." *County of Columbia v. Bylewski*, 94 Wis. 2d 153, 167, 288

*Bylewski* that asserts "[t]he true inquiry" for the court is "whether the property in question is legally usable . . . ." *Id.* at 167, 288 N.W.2d at 136. This inquiry, the majority states, limits the scope of the trial court's balancing role. The majority implicitly suggests the discretion *Bylewski* acknowledges rests with the trial court in situations such as that involving Goode is limited to determining whether a property is legally usable. What the majority, however, curiously terms an exercise of discretion is simply a finding of fact. Finding facts is only one part of the process of exercising discretion. Upon finding the relevant facts, a court properly exercises discretion when it applies those facts to the appropriate law, and reaches a reasoned result. *See Elfelt v. Cooper*, 163 Wis. 2d 484, 498–99, 471 N.W.2d 303, 309 (Ct. App. 1991), *rev'd on other grounds*, 168 Wis. 2d 1008, 485 N.W.2d 56 (1992).

The majority also relies upon *Town of Sherburne v. Carpenter*, 582 A.2d 145, 147–48 (Vt. 1990), for the proposition that the trial court has only limited discretion to refuse to issue injunctive relief sought by a municipality for a zoning ordinance violation. As with its discussion of *Bylewski*, the majority does not fully explore the parameters of this discretion. A reading of *Sherburne* reveals that the limited discretion the trial court retains under that decision extends beyond making *factual findings* of a violation and permanency to denying an injunction in the face of a permanent violation when equity demands. *See id.* at 147–49.

In *Sherburne*, the defendant's screened porch violated the county's setback ordinance by two feet. *Id.* at 146. The defendant offered proof that the violation involved only several inches and was wholly uninten-

N.W.2d 129, 136 (1980) (quoting *Town of Sterling v. Poulin*, 316 N.E.2d 737, 739 (Mass. App. Ct. 1974)).

tional, the zoning administrator having told him that several feet would not make a difference. *Id.* at 147. The trial court denied the request for an injunction without explanation. *Id.* The Vermont supreme court remanded the matter for factual findings, with guidance to the lower court regarding balancing the equities in the case in arriving at its determination whether to grant an injunction. *Id.* at 148.

The *Sherburne* court concluded that the issuance of an injunction rests upon the trial court's determination of two issues. *Id.* at 149. The first is whether the violation was substantial as compared to the presumed public injury arising from the violation. *Id.* "While we recognize the difficulty in weighing public injury against private loss in the typical case, there comes a point were the violation is so insubstantial that it would be unjust and inequitable to require the removal of an offending structure through a mandatory injunction." *Id.* The second area of inquiry is "whether the landowner's violation is innocent or, alternatively, involves conscious wrongdoing." *Id.*

The *Sherburne* court does not support the majority's theory that the trial court's "discretion" is limited to determining what are nothing but factual findings: the existence of (1) a violation that (2) will be permanent. While *Sherburne* recognizes a presumption that the public injury resulting from a zoning violation outweighs the private cost of compliance and that balancing these two interests is therefore not appropriate, it nonetheless recognizes the trial court's authority to balance and indulge such other considerations as would avoid an inequitable result. The court thus retains the authority to deny an injunction in the instance of an unintentional, insubstantial yet permanent violation.

The majority also construes § 59.69(11), STATS., as mandating injunctive relief where a permanent violation is proven, because to permit discretion would usurp a separate branch's authority to grant or deny variances. What the court describes as usurpation of authority is rather an instance of overlapping authority:

> The separation of powers doctrine was never intended to be strict and absolute. Rather, the doctrine envisions a system of separate branches sharing many powers while jealously guarding certain others, a system of "separateness but interdependence, autonomy but reciprocity." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 . . . (1952); *State v. Holmes*, 106 Wis. 2d [31] 42–43, 315 N.W.2d 703 [1982]. When the powers of the legislative and judicial branches overlap, the court has declared that the legislature is prohibited from unreasonably burdening or substantially interfering with the judicial branch. *State v. Unnamed Defendant*, 150 Wis. 2d 352, 360, 441 N.W.2d 696 (1989). This subtle balancing of shared powers, coupled with the sparing demarcation of exclusive powers, has enabled a deliberately unwieldy system of government to endure successfully for nearly 150 years.

*State ex rel. Friedrich v. Circuit Court*, 192 Wis. 2d 1, 14, 531 N.W.2d 32, 36 (1995).

> Each branch has a core zone of exclusive authority into which the other branches may not intrude. *State ex rel. Fiedler v. Wisconsin Senate*, 155 Wis. 2d 94, 100, 454 N.W.2d. 770 (1990), citing *In Matter of Complaint Against Grady*, 118 Wis. 2d 762, 776, 348 N.W.2d 559 (1984). "Great borderlands of power" lie in the interstices among the branches'

core zones of exclusive authority. *In re Appointment of Revisor*, 141 Wis. 592, 597, 124 N.W. 670 (1910). In these borderlands it is neither possible nor practical to categorize governmental action as exclusively legislative, executive or judicial. *Layton School of Art & Design v. WERC*, 82 Wis. 2d 324, 347, 262 N.W.2d 218 (1978).

*Id.* at 13–14, 531 N.W.2d at 36. When the legislature provided the option of seeking injunctive relief, it incorporated all the precedent defining the remedy and its proper imposition, presumably aware both that the court has discretion to grant an injunction and that declining to enjoin a nonconforming use effectively grants a judicial variance.

Aside from the authorities that define an injunction as an equitable, discretionary remedy, there is analogous precedent to demonstrate that equitable remedies are not mandatory when a statutory violation is proven. In *Keane v. St. Francis Hosp.*, 186 Wis. 2d 637, 658–59, 522 N.W.2d 517, 525 (Ct. App. 1994), this court relied on several supreme court decisions in upholding the trial court's discretionary denial of a writ of mandamus where the grounds for issuance had been proven.

"Although classed as a legal remedy, mandamus is equitable in its nature and its issuance is generally controlled by equitable principles. The rights of the public and of third persons may be considered." *State ex rel. Sullivan v. Hauerwas*, 254 Wis. 336, 340, 36 N.W.2d 427, 430 (1949). There can be occasions where a court concludes that the four legal prerequisites for mandamus have been satisfied and yet, on equitable grounds, decides that mandamus should be denied. In *State ex rel. Horton v. Brechler*, 185 Wis. 599, 202 N.W. 144 (1925), the petitioners sought writs of mandamus to compel

238

town clerks to certify the valuation of real and personal property in certain outlying towns which, petitioners demonstrated, belonged in a school district from which the property had been excluded. Although the petitioners demonstrated their clear legal right and the clerks' plain and positive duty, and although the damage was clear and no other remedy existed, the supreme court vacated the temporary injunction ordered by the trial court and denied the petition for writs of mandamus. The supreme court explained:

> While the foregoing establishes the legal duty of the defendant town clerks to make the certificate which these proceedings are brought to compel, we have nevertheless concluded that the writs should not issue. While as a rule the writ of mandamus should issue to enforce a clear legal right, it is a discretionary writ and *may be withheld where its issuance will work confusion or lead to inequitable results.*

*Id.* at 658–59, 522 N.W.2d at 525 (emphasis in original); *see also State ex rel. Milwaukee Sewerage Comm'n v. Milwaukee County Board of Supvs.*, 211 Wis. 412, 248 N.W. 454 (1933), discussed in *Keane,* 186 Wis. 2d at 660–62, 522 N.W.2d at 526–67.

In this case, the trial court heard testimony that the board of adjustment granted eight variances of the type Goode sought between September 9, 1994, and June 26, 1996. Variances were given to build additions within fifteen feet and eighteen feet of the OHWMs. The distance averaged 30.5 feet for the eight variances. The trial court found that no property owners in the area were harmed by Goode's nonconforming use. It considered that zoning ordinances in other counties require a final inspection before the foundation is poured to prevent inadvertent noncompliance. The trial court found this was, indeed, an unintentional

violation. It found an inconsistency between the variance application form and the ordinance. It found it would be "very very expensive" to move the dwelling back from the OHWM. Finally, the trial court found that denying the injunction would not adversely affect zoning in Forest County. It then balanced these considerations against the County's interest in zoning compliance and determined that the equities dictated denial of the injunction.

The trial court could reasonably make the foregoing findings based upon the evidence introduced at the November 7, 1996, trial. The court applied those facts to the applicable law as set forth above. A reasonable judge could conclude that a municipality's generalized interest in gaining and assuring compliance with an ordinance is outweighed when an unintentional violation would result in great expense if conformity was ordered, where there is no tangible harm, where there is a pattern of granting variances to lesser-conforming properties and where imposition of a significant forfeiture serves deterrence. We will sustain the trial court's exercise of discretion if the record reveals that the court examined relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175, 184 (1982). I would hold that the trial court in this case reasonably exercised its discretion by denying the request for an injunction and would therefore affirm the denial order.

I agree with the majority's opinion regarding the forfeiture.