**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 1, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.**  **2020AP1181**
 **2020AP1182**

Cir. Ct. Nos.  2019CX3A
2019CX3B

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT III**

NO. **2020AP1181**

ST. CROIX COUNTY, A MUNICIPAL CORPORATION,

 PLAINTIFF-RESPONDENT,

 V.

MICHAEL R. MICHAUD,

 DEFENDANT-APPELLANT.

NO. **2020AP1182**

ST. CROIX COUNTY, A MUNICIPAL CORPORATION,

 PLAINTIFF-RESPONDENT,

 V.

JOANNE M. MICHAUD,

 DEFENDANT-APPELLANT.

APPEALS from orders of the circuit court for St. Croix County: SCOTT J. NORDSTRAND, Judge. *Affirmed*.

¶1      STARK, P.J.[1]  Michael and Joanne Michaud appeal an order granting summary judgment in favor of St. Croix County ("the County") on its claim that the Michauds violated county ordinances by storing junk and accumulating municipal solid waste on their property.[2]  The Michauds also appeal an order denying their motion for reconsideration.  The Michauds argue there is a genuine issue of material fact regarding the number of days on which they violated the relevant ordinances.  In the alternative, the Michauds assert that the circuit court failed to apply the correct legal standard when determining the number of days for which forfeitures could be imposed.  Alternatively to that, the Michauds contend that the total forfeiture imposed by the court was excessive.  We reject each of these arguments and affirm.

## BACKGROUND

¶2      In 2015, the County commenced an investigation after receiving citizen complaints regarding junk and municipal solid waste on the Michauds' property.  During the course of that investigation, county employees inspected and documented the presence of junk on the Michauds' property on July 20, 2016, June 9, 2017, September 5, 2017, March 30, 2018, and May 4, 2018.  The County conducted additional inspections on July 13, 2018, September 7, 2018, and

---

[1]  These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2]  For the remainder of this opinion we follow the parties' lead and refer to Michael Michaud as "Michaud" and to Joanne Michaud by her full name.  Collectively, we refer to the appellants as "the Michauds."

September 27, 2019, during which it documented the presence of both junk and municipal solid waste.

¶3     During the September 7, 2018 inspection, Michaud told county staff that the property would be in full compliance with the relevant county ordinances by October 19, 2018.  The County therefore scheduled a final inspection for that date.  In a letter dated September 24, 2018, the County acknowledged that since 2015, Michaud had made efforts to clear the junk from his property.  The County admonished Michaud, however, that there was still a large amount of junk on the property, and it warned him that a citation would be issued if the property was not found to be in compliance with county ordinances regarding the storage of junk and municipal solid waste during the October 19 inspection.

¶4     On October 18, 2018, Michaud's attorney informed the County that Michaud was not willing to allow the inspection to proceed as scheduled the following day.  The County therefore issued a citation against Michaud on October 19, in St. Croix County case No. 2018FO520, for storing junk on his property without a conditional use permit, in violation of § 17.15 of the St. Croix County Code of Ordinances ("the Code").  *See* ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 17.15(6)(i).[3]  The citation that the County issued to Michaud alleged a single day of violation—September 7, 2018.

---

[3] The Code is available on the County's website.  *See* ST. CROIX CNTY., WIS., CODE OF ORDINANCES, https://www.sccwi.gov/490/Ordinances (last visited Jan. 21, 2022).  However, the current version of the Code does not include § 17.15.  We therefore refer to the undated version of § 17.15 that the County submitted in support of its summary judgment motion.  The Michauds do not dispute that the version of § 17.15 provided by the County was applicable to their property at all times relevant to these appeals.

(continued)

¶5      Michaud entered a plea of not guilty on November 26, 2018, and he subsequently moved to dismiss the citation.  In support of that motion, Michaud alleged that he had made efforts to bring his property into compliance by October 19, but a nine-inch rainfall had prevented him from completing the clean up.  The circuit court held a hearing on Michaud's motion to dismiss on February 20, 2019, but it did not rule on the motion during that hearing.  Instead, the court asked the parties to meet and work together to reach a solution.

¶6      Another inspection of the property was ultimately scheduled for May 3, 2019.  On April 22, Michaud sent the circuit court a letter in which he stated:  "I failed in, timely manner to get to our set goals to come into compliance at the property."  Michaud also filed with the court a copy of the notice he had received from the County regarding the May 3 inspection, on which he had written:  "[N]o more [i]nspections of [the property] until[] Case 2018FO520 is completed."

¶7      On May 10, 2019, the County filed a summons and complaint against Michaud in St. Croix County case No. 2019CX3A, and against Joanne

---

The Code defines "junk" as "[i]tems, materials or products that are no longer usable as originally intended and/or though capable of being converted to another use are not actually still being used."  ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 17.09(124) (Aug. 15, 2017).  The Code further specifies that the term "junk" includes motor vehicles that are: (1) not currently registered; or (2) not capable of operation on public highways of Wisconsin, and that remain in that condition for more than ten days after receipt of a notice of violation from the zoning administrator. *Id.*

4

Michaud in St. Croix County case No. 2019CX3B.[4]  The County's complaint alleged that the Michauds had violated § 17.15 of the Code by storing junk on their property without a conditional use permit.  The County also alleged that the Michauds had violated § 21.2.B.1.b. of the Code, which provides that no person "shall accumulate on land subject to his or her ownership or control … any municipal solid waste, which accumulation violates this ordinance or which creates an unsanitary condition, nuisance or health or fire hazard."[5]  ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 21.2.B.1.b. (Mar. 15, 2012) (emphasis omitted).

¶8     Although the County alleged in its complaint that the Michauds had been violating both ordinances since December 15, 2015, it asked the circuit court to impose a forfeiture "in the amount of not less than $100.00 nor more than $500.00 for each day since October 19, 2018."[6]  As further relief, the County

---

[4] Although the County filed a single summons and complaint naming both Michaud and Joanne Michaud as defendants, the case against Michaud was assigned case No. 2019CX3A, while the case against Joanne Michaud was assigned case No. 2019CX3B.  Despite the different case numbers, the matters were handled together in the circuit court.  Michaud and Joanne Michaud ultimately filed separate notices of appeal from the orders entered against them in the two cases.  By an order dated July 23, 2020, we granted Michaud's motion to consolidate the two appeals.

[5] The Code defines "municipal solid waste" as "[r]esidential, multi-family and non-residential trash, recyclable materials, banned materials, separated materials and construction and demolition material."  ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 21.5.B.25. (Mar. 15, 2012) (emphasis omitted).

[6] Section 17.71(5)(c) of the Code provides that a violation of Chapter 17 will result in "a forfeiture of not less than $100 nor more than $500 … upon conviction or adjudication."  ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 17.71(5)(c) (Dec. 19, 2014).  The Code further states that each day that a violation of Chapter 17 "exists or continues" constitutes a separate offense.  ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 17.71(5)(d) (Dec. 19, 2014).

(continued)

sought: (1) an order requiring the Michauds to remove all junk and municipal solid waste from their property; (2) damages to recoup any and all costs to clean up the municipal solid waste; and (3) an injunction prohibiting the Michauds from storing junk and municipal solid waste on their property without the required permits. The County also asked the court to consolidate the forfeiture actions against the Michauds with the proceedings on the citation in case No. 2018FO520.

¶9    The circuit court granted the County's request to consolidate during a status conference on May 28, 2019. On September 30, 2019, the County filed a motion for summary judgment, along with a brief and supporting affidavits. The Michauds filed a brief in opposition to summary judgment, and the circuit court held a hearing on the County's motion on January 24, 2020. After the parties presented their arguments, the court granted summary judgment in favor of the County, concluding the undisputed facts established that the Michauds had violated the ordinances in question. The court then scheduled a further hearing to address the appropriate remedy for the violations.

¶10    The County subsequently filed a brief detailing its requested relief, and the circuit court held a hearing on that issue on February 21, 2020. On May 21, 2020, the court entered a written order reaffirming its prior decision to grant summary judgment in favor of the County and imposing a forfeiture in the amount of $46,300. The court explained that the forfeiture "represent[ed] $100 per day for 463 days of violations on September 7, 2018 and from October 19,

---

The Code also provides that a person adjudicated of violating Chapter 21 "shall pay a forfeiture in accordance with the schedule set by the St. Croix County Board of Supervisors." ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 21.4.D.2.a. (Mar. 15, 2012). Again, each day that a violation of Chapter 21 exists constitutes a separate violation. ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 21.4.D.2.b. (Mar. 15, 2012).

2018 through January 24, 2020, pursuant to Section 17.15(5)(c) and (d) of the St. Croix County Code of Ordinances." The court also ordered the Michauds to remove all junk and municipal solid waste from their property by August 1, 2020. In addition, the court permanently enjoined the Michauds from storing junk on their property without a conditional use permit and from accumulating municipal solid waste on their property in a manner that created an unsanitary condition, nuisance, or health or fire hazard.

¶11    The Michauds filed a motion to reconsider, which the circuit court denied in an order dated June 22, 2020. The Michauds now appeal.[7]

## DISCUSSION

### I. Genuine issue of material fact regarding the number of violations

¶12    We independently review a grant of summary judgment, using the same methodology as the circuit court. *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843. Because it is undisputed that the County's complaint stated a claim and that the Michauds' answer joined issue, we begin our analysis by examining the County's submissions to determine whether they established a prima facie case for summary judgment. *See Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983). "A prima facie case is established only when evidentiary facts are stated which[,] if they remain

---

[7] The Michauds' notices of appeal state that they are appealing both the circuit court's May 21, 2020 order reaffirming its summary judgment ruling and imposing a forfeiture of $46,300, and the court's June 22, 2020 order denying their motion for reconsideration. The Michauds do not, however, raise any argument in their appellate briefs specifically challenging the denial of their reconsideration motion. We therefore limit our discussion to whether the court properly granted summary judgment in favor of the County and properly imposed a $46,300 forfeiture.

uncontradicted by the opposing party's affidavits[,] resolve all factual issues in the moving party's favor." *Walter Kassuba, Inc. v. Bauch*, 38 Wis. 2d 648, 655, 158 N.W.2d 387 (1968).

¶13 If the moving party makes a prima facie case for summary judgment, we then examine the nonmoving party's submissions to determine whether a genuine issue exists as to any material fact. *Preloznik*, 113 Wis. 2d at 116. Ultimately, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2).

¶14 When reviewing a circuit court's summary judgment ruling, we construe the facts and all reasonable inferences in favor of the nonmoving party. *Strozinsky v. School Dist. of Brown Deer*, 2000 WI 97, ¶32, 237 Wis. 2d 19, 614 N.W.2d 443. "Should the material presented on the motion be subject to conflicting interpretations or if reasonable people might differ as to its significance, then summary judgment must be denied." *Oddsen v. Henry*, 2016 WI App 30, ¶26, 368 Wis. 2d 318, 878 N.W.2d 720.

¶15 On appeal, the Michauds acknowledge that Sarah Borrell, a land use and conservation specialist employed by the County, averred that she inspected the Michauds' property on two dates: September 7, 2018, and September 27, 2019. On both occasions, Borrell observed an "excessive amount" of junk on the property and an accumulation of solid waste. The Michauds concede these undisputed averments establish that they violated § 17.15(6)(i) and § 21.2.B.1.b. of the Code on September 7, 2018, and September 27, 2019. The Michauds argue, however, that the County failed to make a prima facie showing that they violated

the ordinances "each and every day between October 19, 2018 and January 24, 2020." They instead contend that there is a genuine issue of material fact as to the total number of days on which they violated the ordinances.[8]

¶16    We conclude the County made a prima facie showing that the Michauds violated the relevant ordinances on September 7, 2018, and thereafter on each day between October 19, 2018, and January 24, 2020. In support of its summary judgment motion, the County submitted Michaud's responses to the County's requests for admissions, in which Michaud admitted that the County had inspected and documented the presence of junk on his property on: July 20, 2016; June 9, 2017; September 5, 2017; March 30, 2018; May 4, 2018; July 13, 2018; and September 7, 2018. The County also relied on Borrell's averments that she had personally inspected the Michauds' property on July 13, 2018, September 7, 2018, and September 27, 2019, and had observed solid waste and an "excessive" amount of junk on the property on those dates. Photographs of the property were attached to Borrell's affidavit, which depicted large amounts junk and solid waste on the property on the dates of Borrell's inspections.

¶17    We agree with the County that, in the face of this evidence, "[n]o reasonable jury would believe that the Michauds removed all the junk and solid waste set forth in the pictures in July 2018 and September 2018[,] and then returned the junk to the property when [the County] completed the inspection in September 2019." In other words, no reasonable jury would believe that the

_____

[8] The County asserts the Michauds forfeited their argument that the County proved only two days of violations by failing to raise that argument in the circuit court. The record shows, however, that the Michauds did raise that argument during the circuit court proceedings—specifically, on the second page of a brief that they filed on February 14, 2020, in response to the County's brief regarding the appropriate relief.

Michauds violated the relevant ordinances on September 7, 2018, and September 27, 2019, but not on any of the dates in between.

¶18 Furthermore, it is undisputed on appeal that following the County's September 7, 2018 inspection, the Michauds were unable to bring their property into compliance by the October 19, 2018 deadline. Michaud also conceded in his April 22, 2019 letter to the circuit court that he had failed to bring the property into compliance in a timely manner. In addition, during the summary judgment hearing on January 24, 2020, the Michauds confirmed that they stopped removing junk and solid waste from the property when the County issued Michaud a citation on October 19, 2018. The only reasonable inference from this evidence is that the Michauds continued to violate the relevant ordinances on each day between October 19, 2018, and January 24, 2020.

¶19 In response to the County's summary judgment motion, the Michauds did not submit any evidence that would give rise to a competing reasonable inference that they did not violate the relevant ordinances on each day between October 19, 2018, and January 24, 2020. The Michauds did not, for instance, submit any evidence showing that they removed all of the junk and solid waste from their property at any point during the time period in question. On this record, we reject the Michauds' claim that a genuine issue of material fact existed regarding the number of days on which they violated the ordinances. The circuit court properly determined, as a matter of law, that the Michauds violated the ordinances on September 7, 2018, and on each day between October 19, 2018, and January 24, 2020.

¶20 The Michauds argue that the circuit court erred by granting summary judgment in favor of the County because the County presented no "direct

evidence" showing a violation on each day between October 19, 2018, and January 24, 2020. Lacking such direct evidence, the Michauds contend that the court was required to draw an "inference" that "because the property was in violation on [both September 7, 2018, and September 27, 2019], it must have been in continuous violation between those dates." The Michauds concede that inference "may very well be reasonable, if not probable," but they assert it is not the only reasonable inference that can be drawn from the evidence. Specifically, they contend a fact finder could reasonably infer that the junk and solid waste that were present on their property during the September 7, 2018 and September 27, 2019 inspections "might have been moved" in the interim. They further assert there is no evidence that the junk and solid waste that Borrell observed during the September 27, 2019 inspection were the same junk and solid waste that had been present during the September 7, 2018 inspection.

¶21     We reject these arguments because the County was not required to prove that the same junk and solid waste were present on each day during the relevant time period. Moreover, the County was not required to present "direct evidence" that a violation occurred each day in order to prevail on its summary judgment motion. As explained above, the summary judgment record gave rise to a single reasonable inference—i.e., that junk and solid waste were present on the Michauds' property on September 7, 2018, and on every day between October 19, 2018, and January 24, 2020.

¶22     This is not a case in which the circuit court improperly chose between competing reasonable inferences on summary judgment; this is a case in which the court correctly determined that the *only* reasonable inference to be drawn from the undisputed facts showed that the County was entitled to summary judgment. "If there is but a single reasonable inference to be drawn from the

undisputed facts, and if that inference favors the movant, summary judgment is proper." *United Concrete & Constr., Inc. v. Red-D-Mix Concrete, Inc.*, 2013 WI 72, ¶12, 349 Wis. 2d 587, 836 N.W.2d 807. Here, the court properly granted summary judgment to the County regarding the number of violations based on the only reasonable inference that could be drawn from the undisputed facts.

## II. Legal standard for determining the number of days for which forfeitures could be imposed

¶23 Alternatively, the Michauds assert that the circuit court applied an incorrect legal standard when determining the number of days for which forfeitures could be imposed. Whether the court applied the correct legal standard is a question of law that we review independently. *See State v. Kramer*, 2001 WI 132, ¶17, 248 Wis. 2d 1009, 637 N.W.2d 35.

¶24 Citing *Forest County v. Goode*, 215 Wis. 2d 218, 572 N.W.2d 131 (Ct. App. 1997), *aff'd* 219 Wis. 2d 654, 579 N.W.2d 715 (1998), the Michauds argue that the circuit court could impose daily forfeitures only for September 7, 2018, and for the time period between the date when the County filed its complaint in the forfeiture cases and the date of the summary judgment hearing. The Michauds therefore assert that they should be subject to forfeitures for only 260 days (comprised of September 7, 2018, and the period between May 10, 2019, and January 24, 2020), rather than the 463 days determined by the court.

¶25 We reject this argument based on our decision in *Village of Sister Bay v. Hockers*, 106 Wis. 2d 474, 317 N.W.2d 505 (Ct. App. 1982). In that case, the Village of Sister Bay gave the defendants notice of building permit violations on October 11, 1978. *Id.* at 478. The Village subsequently filed a complaint against the defendants on November 17, 1978, and the matter came to trial on

12

December 8, 1980. *Id.* The ordinance in question provided a minimum forfeiture of $10 per violation, and it also specified that each day on which a violation occurred constituted a separate violation. *Id.* The circuit court imposed a forfeiture of $1,000—or $10 per day for 100 days. *Id.*

¶26 On appeal, the Village argued the circuit court was required to impose at least the minimum forfeiture for each day on which a violation occurred. *Id.* We agreed, concluding the court lacked authority to impose less than the minimum forfeiture prescribed by the ordinance. *Id.* at 478-79. We expressly stated that "[w]hen a legislative body, acting within its authority, sets minimum and maximum forfeitures, the court has no authority to impose less than the minimum forfeiture." *Id.* at 479. We further concluded that the court's "finding of 100 days' violation" was in conflict with the "undisputed evidence" that the violations existed from October 11, 1978—the date the Village gave the defendants notice of the violations—until December 8, 1980—the date of trial. *Id.* We therefore held, as a matter of law, that the court was required to impose at least the $10 minimum forfeiture for each day between October 11, 1978, and December 8, 1980. *Id.*

¶27 *Hockers* stands for the proposition that when an ordinance requires a court to impose a minimum forfeiture amount for each day on which a violation occurred, and when the prosecuting authority submits evidence establishing that a violation occurred on a certain number of days and seeks forfeitures for each of those days, then the court must impose at least the minimum forfeiture for each day on which a violation occurred. Here, as explained above, the undisputed evidence established that the Michauds violated § 17.15(6)(i) and § 21.2.B.1.b. of the Code on September 7, 2018, and on each day between October 19, 2018, and January 24, 2020, for a total of 463 days. The County sought forfeitures for each

13

one of those days. The Code provides that for a violation of Chapter 17, "a forfeiture of not less than $100 nor more than $500 shall be imposed upon conviction or adjudication." ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 17.71(5)(c) (Dec. 19, 2014). The Code further provides that "[e]ach day a violation [of Chapter 17] exists or continues shall constitute a separate offense." ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 17.71(5)(d) (Dec. 19, 2014). As such, § 17.71(5)(c) and (d) of the Code required the circuit court to impose a forfeiture of at least $100 for each of the 463 days on which a violation of Chapter 17 occurred and for which the County sought a forfeiture. The $46,300 forfeiture imposed by the court was therefore consistent with—and required by— our decision in *Hockers*.

¶28 The Michauds suggest that our decision in *Goode* abrogated *Hockers*' holding regarding the time period for which forfeitures may be imposed. They assert that, in *Goode*, we instead held that forfeitures may be imposed only from the date the County files its complaint until the date of trial. The Michauds are mistaken. The defendant in *Goode* violated a setback requirement in Forest County's zoning ordinance. *Goode*, 215 Wis. 2d at 220-22. The circuit court imposed forfeitures of $35 per day "for the time period from May 19, 1994, the date of notice of the violation[,] until January 18, 1995, the commencement of a formal action by the County, a total of 244 days." *Id.* at 223. On appeal, we agreed with the County that under *Hockers*, the circuit court should have imposed forfeitures for 861 days—representing the period from May 19, 1994, the date of notice, until September 27, 1996, the date of trial. *Goode*, 215 Wis. 2d at 230.

¶29 Despite concluding in *Goode* that the circuit court should have imposed forfeitures for the 861-day period between the date the County gave notice of the violation and the date of trial, we stated at one point in our opinion

14

that the court should have imposed forfeitures for the time period "from the filing of the complaint until the time of trial." *Id.* at 230. Elsewhere, we stated the forfeiture period spanned "the date of the commencement of the action until the time of trial." *Id.* at 231. Based on these statements, the Michauds contend our actual holding in *Goode* was that daily forfeitures can be imposed only from the date the complaint was filed until the date of trial.

¶30    We reject this argument because, despite the statements that the Michauds cite, we clearly held in *Goode* that the circuit court should have imposed forfeitures for the 861-day period between the date the County gave notice of the violation and the date of trial. Although we referred in various places to that 861-day period beginning on the date the complaint was filed or the date the action was commenced, we consistently gave the starting date as May 19, 1994, which was the date the County gave notice of the violation. *See id.* at 222-23 (stating that notice of the violation was given on May 19, 1994), 230-31 (stating that the 861-day period began on May 19, 1994). Moreover, if the forfeiture period in *Goode* actually began on the date the complaint was filed (January 18, 1995), the County would have been entitled to forfeitures for only 617 days, rather than 861. *See id.* at 223 (noting that the action was commenced on January 18, 1995). Our determination in *Goode* that the County was entitled to forfeitures for 861 days, instead of 617, shows that we concluded the forfeiture period began on the date

the County gave notice of the violation, rather than on the date the complaint was filed.[9]

¶31    The Michauds further argue, in the alternative, that the circuit court "should be free to determine when and how the forfeiture is imposed[,] consistent with the holding in *Town of Cedarburg v. Shewczyk*, 2003 WI App 10, 259 Wis. 2d 818, 656 N.W.2d 491 [(2002)]." The Michauds' reliance on *Shewczyk* is misplaced. The defendants in *Shewczyk* violated a conditional use permit (CUP). *Id.*, ¶1. The circuit court enjoined the defendants from further violating the CUP, and it ordered them to comply with the CUP's conditions within forty-five days. *Id.*, ¶12. The court further ordered that if the defendants did not comply by that date, they would be subject to a forfeiture of $100 per day until they brought their property into compliance. *Id.*

¶32    The Michauds argue *Shewczyk* shows that a circuit court is not required to impose a forfeiture for every day on which a violation has occurred. Our decision in *Shewczyk* did not address that issue, however. Instead, our decision addressed: (1) whether the Town of Cedarburg could obtain injunctive relief and forfeitures based on a violation of a CUP, as opposed to a violation of an ordinance, *see id.*, ¶15; (2) whether the Town's Board of Appeals had properly denied the defendants' zoning permit application, *see id.*, ¶18; and (3) whether the

---

[9] The Michauds also cite our supreme court's decision in *Forest County v. Goode*, 219 Wis. 2d 654, 656-57, 579 N.W.2d 715 (1998), which affirmed the court of appeals' decision with respect to a separate issue—namely, whether the circuit court had erred by denying the County's request for an injunction. The supreme court's decision in *Goode* does not aid our analysis, however, as the court expressly stated that the defendant "[sought] review only of the court of appeals' reversal of the order denying injunctive relief." *Id.* at 657. As such, the supreme court did not address the court of appeals' holding regarding the number of days for which forfeitures could be imposed.

circuit court had erred in upholding the Town's decision to defer the defendants' appeal proceedings before the Board of Appeals, *see id.*, ¶20.

¶33 Thus, *Shewczyk* did not address the propriety of the circuit court's decision not to impose a forfeiture for each day on which a violation had occurred. We therefore reject the Michauds' assertion that, under *Shewczyk*, the circuit court was "free to determine when and how the forfeiture [was] imposed," without regard for our holdings in *Hockers* and *Goode*, and without regard for the Code's provisions regarding the minimum forfeiture amount.

## III. Excessive forfeiture

¶34 Finally, the Michauds contend that the forfeiture imposed by the circuit court was excessive for both constitutional and nonconstitutional reasons. Addressing nonconstitutional considerations first, the Michauds note that WIS. STAT. § 59.69(11) states zoning ordinances "shall be enforced by *appropriate* forfeitures." (Emphasis added.) Citing *City of Madison v. McManus*, 44 Wis. 2d 396, 402, 171 N.W.2d 426 (1969), the Michauds further assert that: (1) a forfeiture should not be used to punish; (2) the purpose of a forfeiture is to pay the cost of enforcement; (3) raising revenue in lieu of taxation cannot be the primary purpose of a forfeiture; (4) a forfeiture should not exceed the fine imposed by an ordinance's statutory counterpart; and (5) whether a forfeiture is excessive must be viewed in light of the nature and object of the ordinance. The Michauds also cite *Hockers*, where we stated that a forfeiture "may be imposed to effect compliance and deter violations." *Hockers*, 106 Wis. 2d at 480.

¶35 The Michauds contend that the $46,300 forfeiture the circuit court imposed did not satisfy any of these criteria and was therefore excessive. We reject this argument for three reasons.

17

¶36    First, in the circuit court, the Michauds argued only that the County's proposed forfeiture was excessive on constitutional grounds. They did not cite any of the nonconstitutional criteria on which they now rely in support of their claim that the forfeiture was excessive. Arguments raised for the first time on appeal are generally deemed forfeited. *Tatera v. FMC Corp.*, 2010 WI 90, ¶19 n.16, 328 Wis. 2d 320, 786 N.W.2d 810.

¶37    Second, as the Michauds concede, we expressly held in *Hockers* that "[w]hen a legislative body, acting within its authority, sets minimum and maximum forfeitures, the court has no authority to impose less than the minimum forfeiture." *Hockers*, 106 Wis. 2d at 479. Here, the undisputed evidence established that the Michauds violated the ordinances in question on September 7, 2018, and on each day between October 19, 2018, and January 24, 2020. The County sought forfeitures for each one of those violations. As explained above, § 17.71(5)(c) and (d) of the Code required the court to impose a forfeiture of at least $100 for each day on which the County proved that a violation occurred. Consistent with § 17.71(5)(c) and (d), the court imposed the minimum allowable forfeiture of $100 for each of the 463 proven violations, which resulted in a total forfeiture of $46,300. Under *Hockers*, the court was not permitted to deviate from the minimum forfeiture prescribed by the Code, and sought by the County, and instead order the Michauds to pay a lesser amount.

¶38    Third, the $46,300 forfeiture was not excessive under the other nonconstitutional criteria that the Michauds cite. The Michauds cite no evidence that the forfeiture was imposed for the purpose of punishment, or for the purpose of raising revenue in lieu of taxation. *See McManus*, 44 Wis. 2d at 402. In addition, the Michauds do not argue that the forfeiture was in excess of the fines imposed by any statutory counterparts to the ordinances in question. *See id.*

Moreover, the forfeiture is consistent with the nature and object of the ordinances—i.e., preventing the unsightly and potentially hazardous storage of junk and accumulation of solid waste on properties in the County. *See id.* The forfeiture also serves the dual objectives of effecting compliance and deterring future violations. *See Hockers*, 106 Wis. 2d at 480. Under these circumstances, we reject the Michauds' assertion that the forfeiture is excessive on nonconstitutional grounds.

¶39  As noted above, the Michauds also argue that the forfeiture is excessive for constitutional reasons—specifically, because it violates the Eighth Amendment to the United States Constitution and article I, section 6 of the Wisconsin Constitution. Both of those constitutional provisions prohibit the government from imposing "excessive fines." *City of Milwaukee v. Arrieh*, 211 Wis. 2d 764, 771, 565 N.W.2d 291 (Ct. App. 1997). "If the goal of a civil forfeiture action is, at least in part, punishment, the forfeiture may not be constitutionally excessive." *State v. Boyd*, 2000 WI App 208, ¶7, 238 Wis. 2d 693, 618 N.W.2d 251.

¶40  Whether a forfeiture is constitutionally excessive is a question of law that we review independently. *Id.* We apply the proportionality test set forth in *United States v. Bajakajian*, 524 U.S. 321 (1998), to determine whether a forfeiture is constitutionally excessive. *See Boyd*, 238 Wis. 2d 693, ¶¶9-15. The proportionality test is based on the notion that "[t]he amount of the forfeiture must bear some relationship to the gravity of the offense it is designed to punish." *Id.*, ¶11 (quoting *Bajakajian*, 524 U.S. at 334). Stated differently, a punitive forfeiture "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.* (quoting *Bajakajian*, 524 U.S. at 334). Under the proportionality test, we consider: (1) the nature of the offense; (2) the purpose for

enacting the ordinance in question; (3) the fines commonly imposed upon similarly situated offenders; and (4) the harm resulting from the defendant's conduct. *Id.*, ¶14.

¶41 We are not convinced that the goal of the forfeiture in the instant cases was, either in whole or in part, to punish the Michauds. However, even if we assumed that the forfeiture was punitive, we would nevertheless conclude it was not excessive under the proportionality test.

¶42 Considering the first factor under that test—the nature of the offense—we observe that the Michauds stored junk and accumulated solid waste on their property, in violation of Chapters 17 and 21 of the Code, beginning in at least 2015. The Michauds were given notice that the County believed their property was in violation of the Code as early as June 2015. They acknowledged the need to remove the junk and municipal solid waste from their property, and they agreed to have their property cleaned up by October 2018. Despite having over three years to clean up their property before the County issued a citation in October 2018, the Michauds failed to bring the property into compliance. As the circuit court aptly noted, the Michauds' Code violations were "significant and prolonged." We agree with the County that under these circumstances, the forfeiture imposed by the court—which was the minimum amount allowed by the Code—was necessary to ensure compliance with the Code and to deter the Michauds from committing future violations.

¶43 The purpose for enacting the relevant Code sections further supports a determination that the forfeiture was not excessive. Chapter 17 of the Code was enacted "for the purpose of promoting the public health, safety and general welfare." ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 17.01(2) (Aug. 15,

20

2017). Chapter 21, in turn, was enacted for several purposes, including: (1) "[t]o promote and protect public health, environment, safety and general welfare by minimizing environmental, economic and social costs to the residents of the responsible unit and beyond in an effort to promote ecological and environmental sustainability"; (2) "[t]o ensure proper municipal solid waste management to protect the environment and health of the citizens of St. Croix County and beyond"; and (3) "[t]o protect life, health and property." ST. CROIX CNTY., WIS., CODE OF ORDINANCES § 21.1.B.1.a.-c. (Mar. 15, 2012) (emphasis omitted). The circuit court correctly stated that these purposes "are compelling and universally recognized."

¶44 Turning to the fines commonly imposed on similarly situated offenders, the circuit court observed that the forfeiture it imposed was "similar to those upheld by the Wisconsin appellate courts for similar offenses." Specifically, the court cited *Village of Trempealeau v. Mikrut*, 2004 WI 79, ¶4, 273 Wis. 2d 76, 681 N.W.2d 190, which involved forfeitures totaling $104,193 for 227 days of violations involving illegal junk storage. The court also cited *State v. Schmitt*, 145 Wis. 2d 724, 729, 429 N.W.2d 518 (Ct. App. 1988), in which forfeitures totaling $202,550 were imposed for the defendant's illegal operation of a landfill. We agree with the court that the forfeitures imposed in *Mikrut* and *Schmitt* support a conclusion that the forfeiture imposed in the instant cases was not excessive.

¶45 We must also consider the harm resulting from the Michauds' conduct. As the circuit court correctly observed, the harm caused by the Michauds' conduct was "significant," and the County tried "for years" to work with the Michauds to remedy the violations voluntarily. The Michauds' neighbors

21

began complaining about the condition of their property in 2015. One citizen complaint asserted:

> The number of vehicles, machinery, and garbage has increased to a very disturbing amount. In the last two years [Michaud] has put up a fence in his front yard to hide what is in the back yard. Due to the amount of vehicles, machinery & garbage, ground water contamination is a very large concern.

The County received another complaint from a neighbor in December 2018, which described the Michauds' property as a "neighborhood eyesore[]" and asserted that the property "seems to slowly get worse every year." The 2018 complaint also raised a concern regarding the "pollution potential" associated with the Michauds storing over twenty derelict vehicles on their property. These complaints demonstrate the real and significant harm that the condition of the Michauds' property caused.[10]

¶46 Each of the four factors set forth in ***Bajakajian*** supports a determination that the forfeiture the circuit court imposed was proportional to the gravity of the Michauds' violations. As such, we reject the Michauds' claim that the forfeiture was constitutionally excessive.

> *By the Court.*—Orders affirmed.

> This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[10] The Michauds assert there is no evidence that the vehicles on their property actually caused any ground water contamination or other pollution. Be that as it may, given the condition of their property (as documented by the photographs in the record), and given the large number of derelict vehicles present on the property, their neighbors' concerns regarding pollution were not unreasonable.